IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

MUJTABAA MUBASHSHIR,
              Petitioner,

-vs-

EDWARD SHELDON, WARDEN,

              Respondent,

---

CASE NO. 1:11-CV-1623

**MEMORANDUM OF OPINION AND ORDER**

UNITED STATES DISTRICT JUDGE LESLEY WELLS

*Pro se* petitioner Mujtabaa Mubashshir, a.k.a. Lapetto Johnson, filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Mr. Mubashshir is a state prisoner incarcerated at North Central Correctional Institution in Marion, Ohio. He asserts that Ohio's application of parole guidelines promulgated in 1998, 2000 and 2007 to determine his suitability for release violates the Separation of Powers, Ex Post Facto, Due Process, Double Jeopardy and Equal Protection clauses of the United States Constitution. Petitioner seeks immediate release.

Petitioner also filed Motions to Proceed *in forma pauperis*. (Doc. 4, 5). These latter two Motions are granted.

## BACKGROUND

Mr. Mubashshir pled guilty in October 1988 to seven counts of kidnaping, six counts of rape, three counts of abduction, five counts of felonious assault, two counts of

gross sexual imposition, two counts of aggravated robbery, and one count of attempted rape. He was sentenced on 27 October 1988 to an aggregate 96 years actual incarceration to 235 years incarceration. See State v. Johnson, 1990 WL 37355 at * 2 (Ohio App. 8th Dist. March 29, 1990).

On 1 July 1996, Ohio Senate Bill 2 went into effect. Before Senate Bill 2, inmates received an indefinite sentence and the Ohio Adult Parole Authority ("OAPA") determined the amount of time the inmate would serve before being released on parole. Inmates convicted after 1 July 1996 generally received a definite term of incarceration. Because there was no longer a minimum and maximum sentence, there was no need for a parole system for inmates sentenced after Senate Bill 2. Instead, a term of supervised release was added to their sentences.

In response to Senate Bill 2, the OAPA revised the parole guidelines in 1998, and again in 2000, to give a projected release date to those inmates who were convicted prior to 1 July 1996 and who did not get the benefit of a definite sentence. These guidelines assigned a numerical offense category to an inmate based upon the nature of his or her crime, and a risk score based upon several factors including the inmate's criminal record and institutional behavior. The two numbers were then placed on a grid which determined the recommended range of time in terms of the number of months that the inmate should serve before he or she would be considered suitable for parole release ("the guideline range"). The projected release date was set for a period of time within the guideline range. These guidelines were not mandatory and the OAPA had the discretion to depart upward or downward from the guideline score.

Mr. Mubashshir received his first parole eligibility hearing in October 1998, after serving approximately ten years of his sentence. (Doc. 1-2 at 6). He claims that, under the guidelines in place at the time of his guilty plea, his aggregate minimum sentence was 15 years. However, under the parole guidelines developed in 1998, he claims he was "illegally" placed in Offense Category 13 with a Risk Score of 1. (Doc. 1-2 at 6). The guideline range for this classification indicated he would not be eligible for parole for 300 months to Life. The Hearing Record notes that a 120 month continuance would still be short of the guideline. (Doc. 1-2 at 6).

Mr. Mubashshir received his second parole hearing in October 2003. This time, he was assigned to Offense Category 12 with a Risk Score of 1. (Doc. 1-2 at 37). The Parole Board Decision Sheet from this hearing indicates that the guideline range for Mr. Mubashshir's parole eligibility was 240 to 332 months. In denying parole, the hearing panel noted that "based on the serious nature of the crimes committed, the number of victims involved and the duration of these offenses, [Mr. Mubashshir will be kept at the previous action." (Doc. 1-2 at 38). The next hearing was continued for 60 months. (Doc. 1-2 at 38). Mr. Mubashshir claims that this determination was illegal because, at the time of his plea, his aggregate minimum sentence was 180 months and that the October 2003 hearing "camouflage[d] petitioner's maximum 180 month sentence with the sentence enhancement of a new minimum 180 to 272 maximum," which he claims is well beyond statutory limits.

Another parole hearing was held in October 2006. Mr. Mubashshir was again assigned to Offense Category 12 with a Risk Score of 1. (Doc. 1-2 at 43). His total

3

time served was calculated as 219 months (which included five months of jail time credit) and the guideline range for parole eligibility was listed as 0 to 300 months. While the parole board noted that Mr. Mubashshir had "demonstrated improving prison adjustment over the years," it found that "[t]he magnitude of the victimization indicates a conscious disregard for the well being of others and suggests a considerable risk to public safety." (Doc. 1-2 at 44). Parole was denied and the next hearing was continued for 21 months.

In 2007, the OAPA again revised its parole guidelines to incorporate the substantive modifications imposed by recent Ohio Supreme Court decisions and to give consideration to current definite sentences imposed for similar offenses under Senate Bill 2. Under the 2007 guidelines, the low end of the guideline range became the actual minimum sentence the inmate received by the sentencing court. The upper end of the guideline range reflects the amount of incarceration that the inmate would have received as a definite sentence if he or she had been convicted after Senate Bill 2. In addition, inmates will no longer receive a projected release date unless that release date is within five years of the hearing. If the board determines that the inmate is not suitable for release within five years, the hearing will be continued. The first continuance can be up to ten years. Thereafter, the hearing may only be continued for five years, unless a longer continuance is approved by the Central Board of Review.

Mr. Mubashshir was seen by the parole board again in May 2008. His Offense Category continued to be a 12 and his Risk Score was 1. Under the 2007 guidelines, his range was 0 to 300 months. In denying parole, the Board found that Mr.

4

Mubashshir's "offense behavior is aggravated by multiple attacks on female victims who were either robbed, physically assaulted, or sexually assaulted" and that "[t]he unusual magnitude of the offense behavior was recognized by the Court in the imposition of consecutive maximum sentences." (Doc. 1-2 at 47). The Board further noted that "[r]elease at this time would demean the seriousness of the offense and be contrary to public safety interests." (Doc. 1-2 at 47). The next hearing was continued for 61 months.

In November 2009, Mr. Mubashshir filed a Complaint for Writ of Habeas Corpus in the Ohio Supreme Court, in which he argued the parole board illegally increased his sentence by retroactively applying Ohio's 1998, 2000 and 2007 parole guidelines. The Ohio Supreme Court issued a "Merit Decision Without Opinion" and dismissed Mr. Mubashshir's state petition on December 30, 2009. Several months later, on April 16, 2010, Mr. Mubashshir filed a Complaint for Writ of Habeas Corpus in the Marion County Court of Common Pleas, again raising the claim that the retroactive application of changes to Ohio's parole guidelines violated his constitutional rights. This petition was denied on the basis of *res judicata*. Mr. Mubashshir appealed, and the Ohio appellate court affirmed the trial court's dismissal of his petition in an Opinion dated October 4, 2010.

Mr. Mubashshir filed the instant Petition on 5 August 2011. He contends the use of parole guidelines developed after 1988 to determine his suitability for release on parole violates the Separation of Powers, Ex Post Facto, Due Process, Double Jeopardy and Equal Protection clauses of the United States Constitution.

ANALYSIS

A federal court may entertain a habeas petition filed by a person in state custody only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Pursuant to Rule 4 of the Rules Governing § 2254 Cases, the Court must undertake a preliminary review of a habeas petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; see 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. See Allen v. Perini, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter the "AEDPA"), which amended 28 U.S.C. § 2254, was signed into law on 24 April 1996. The provisions of the AEDPA apply to habeas corpus petitions filed after that effective date. See Woodford v. Garceau, 538 U.S. 202, 210 (2003); Barker v. Yukins, 199 F.3d 867, 871 (6th Cir. 1999). Because Mr. Mubashshir's Petition was filed on 5 August 2011, well after the AEDPA's effective date, the AEDPA governs this Court's consideration of his Petition.

The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'" Woodford, 538 U.S. at 206 (quoting Williams v. Taylor, 529 U.S. 362, 436 (2000)). The requirements of the AEDPA "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set

6

aside state-court rulings." Uttecht v. Brown, 551 U.S. 1, 127 S.Ct. 2218, 2224 (2007) (citations omitted). As the Supreme Court recently explained, the AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 131 S.Ct. 770, 786 (Jan. 19, 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979)).

> Section 2254(d) provides:
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This is "a 'difficult to meet'. . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (April 4, 2011) (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011) and Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). The petitioner carries the burden of proof. Pinholster, 131 S.Ct. at 1398.

Under the AEDPA, a federal court cannot grant a writ of habeas corpus to a prisoner held in state custody unless the applicant has exhausted all available remedies in state court. See 28 U.S.C. § 2254(b), (c); Rose v. Lundy, 455 U.S. 509 (1982).

7

Exhaustion is fulfilled once a state supreme court provides a convicted defendant an opportunity to review his or her claims on the merits. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). A habeas petitioner satisfies the exhaustion requirement when the highest court in the state in which the petitioner has been convicted has had a full and fair opportunity to rule on the claims. Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994); Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990). If under state law there remains a remedy that a petitioner has not yet pursued, exhaustion has not occurred and a federal habeas court cannot entertain the merits of the claim. 28 U.S.C. § 2254(c)(stating that "an applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). See also Rust, 17 F.3d at 160.

The Court finds that Mr. Mubashshir has not exhausted his state court remedies for his claims regarding the retroactive application of Ohio's 1998, 2000 and 2007 parole guidelines in determining his suitability for parole. While he did file petitions for writs of habeas corpus in state court raising these claims, the Ohio Supreme Court has held that state habeas relief is generally appropriate in the criminal context only if the prisoner is entitled to immediate release from prison. Douglas v. Money, 85 Ohio St.3d 348, 349 (1999). Mr. Mubashshir's maximum prison sentence of 235 years has not expired, and he has no inherent or constitutional right to be released before its expiration under Ohio law. Hunt v. Sheldon, 127 Ohio St.3d 14 (2010). Therefore, Mr. Mubashshir's claims regarding the constitutionality of parole eligibility requirements as

applied to him are not cognizable in state habeas corpus. Ridenour v. Riddle, 96 Ohio St.3d 90, 91 (2002).

Rather, the Ohio Supreme Court has held that a declaratory judgment action is the proper remedy to determine the constitutionality or constitutional application of parole guidelines. Hattie v. Anderson, 68 Ohio St.3d 232, 235 (1994). See also Curtis v. Ohio Adult Parole Authority, Case No. 04AP-1214, 2006 WL 23248 (Ohio App. 10 Dist. Jan. 5, 2006); State of Ohio v. Hall, Case No. 2003-T-0114, 2004 WL 2785544 at * 11 (Ohio App. 11 Dist. Dec. 6, 2004). Mr. Mubashshir does not allege that he has presented these claims to the Ohio courts in the form of a declaratory judgment action.

Because Mr. Mubashshir's claims are unexhausted and he has an available remedy in state court, the Court will dismiss this action.

## Conclusion

Accordingly, this action is dismissed without prejudice pursuant to Rule 4 of the Rules Governing Section 2254 Cases. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

IT IS SO ORDERED.

/s/ Lesley Wells
UNITED STATES DISTRICT JUDGE